## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **GLOBALFAB, L.L.C. and** | § | |
| **TIMOTHY SCOTT THOMAS** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **vs.** | § | **CV No. 06:10-cv-139-LED** |
| | § | |
| **ALLEN GALYEAN,** | § | |
| **GALYEAN EQUIPMENT** | § | |
| **COMPANY, INC., GALYEAN L.P.,** | § | |
| **CITY OF HENDERSON,** | § | **JURY TRIAL REQUESTED** |
| **CITY OF HENDERSON POLICE** | § | |
| **DEPARTMENT,** | § | |
| *Defendants.* | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

Plaintiffs, GlobalFab, L.L.C. and Timothy Scott Thomas (respectively "GlobalFab" and "Thomas", collectively "Plaintiffs"), file this their First Amended Complaint against Defendants, Allen Galyean, Galyean Equipment Company, Inc. ("Galyean Equipment"), Galyean L.P., the City of Henderson, and the City of Henderson Police Department, and would show the Court as follows:

## PARTIES

1.       GlobalFab, L.L.C. is a Texas limited liability corporation having its principal place of business at 2963 CR 407 South, Henderson, Texas 75654.  Service of process may be made upon GlobalFab's counsel of record at Matthews, Lawson, Johnson & Payne, 2000 Bering Drive, Suite 700, Houston, Texas 77057.

2.       Timothy Scott Thomas is an individual resident of Henderson, Rusk County, Texas and may be served by and through his counsel of record at Matthews, Lawson, Johnson & Payne, 2000 Bering Drive, Suite 700, Houston, Texas 77057.

1

3.      Galyean Equipment Company, Inc. is a Texas corporation with a principal place of business at 1225 Industrial Drive, Henderson, Texas 75652 and may be served with process through its registered agent, Larry Galyean, at 1000 E. Main, Henderson, Texas, 75652.

4.      Galyean L.P. is a Texas limited partnership with a principal place of business at 1225 Industrial Drive, Henderson, Texas 75652 and may be served with process through its registered agent, Allen D. Galyean, at 1225 Industrial Drive, Henderson, Texas 75652.

5.      Allen Galyean is an individual who is a resident of Henderson, Rusk County, Texas and may be served with process at 1225 Industrial Drive, Henderson, Texas 75652.

6.      The City of Henderson is a town in Rusk County, Texas and may be served process through the city secretary at City Hall, 400 West Main, Henderson, Texas 75652.

7.      The Henderson Police Department is a governmental department of the City of Henderson and may be served process through the Chief of Police Ronnie Walker at 610 Hwy 79N, Henderson, Texas 75652.

## JURISDICTION

8.      This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because GlobalFab and Thomas assert claims that arise under the Fourth and Fourteenth Amendments of the United States of America.  This Court also has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1343 because Thomas asserts claims for conspiracy to violate his civil rights under 42 U.S.C. §§ 1983 and 1985(c) and a deprivation of his civil rights under the Fourth and Fourteenth Amendments.

9.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over GlobalFab and Thomas' state law claims for, misappropriation of confidential and

proprietary information and trade secrets and unfair competition, breach of trust and confidential relationship, libel and/or slander, business disparagement, conversion, abuse of process, unjust enrichment, negligence/gross negligence, and fraud.  These causes of action are so intertwined with the underlying facts and the federal cause of action that this Court should exercise supplemental jurisdiction over these claims, as will be shown below.

## VENUE

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events or omissions giving rise to GlobalFab and Thomas' claims occurred in this district and at least one defendant resides in this judicial district and all defendants are residents or have principal places of business within Texas.

## STATEMENT OF FACTS

11.     Thomas began working at Galyean Equipment in 2002.  At that time Galyean Equipment had approximately nine employees.  Thomas began to excel at the tasks delegated to him by Allen Galyean and was promoted eventually as Allen Galyean's "right-hand-man," having supervisory and managerial capacities of the day-to-day operations at Galyean Equipment.

12.     In 2004, Galyean Equipment began to manufacture vacuum tank trailers, similar to, but distinct from, from the low profile tank trailers current produced and designed by Plaintiffs.  Due to an increase in demand for these particular trailers, Thomas hired additional employees to assist in the fabrication process.  One of the additional employees was Joey DelaRosa ("DelaRosa").  DelaRosa began as general labor and as an assistant in the fabrication areas of Galyean Equipment.  DelaRosa was eventually

promoted to a supervisory position.  DelaRosa purchased CAD software for his home computer, and taught himself how to use the program on nights, weekends, and other times at which he was not working at Galyean Equipment.  DelaRosa brought this new skill to Galyean Equipment and began to perform draftsman design work for new trailer schematics.

13.     In 2008, a potential customer, Basic Energy, approached Galyean Equipment about a "low profile" tank trailer design to see if Galyean Equipment would be able to provide such a product.  Thomas and DelaRosa began developing an initial low profile tank trailer design and submitted the initial design schematic to Allen Galyean for approval.  Allen Galyean rejected Thomas and DelaRosa's initial design and asked for them to prepare drawings based on Allen Galyean's own plans and ideas.

14.     Thomas and DelaRosa prepared the plans and schematics for Allen Galyean's design and submitted the plans to Dickie Davis, P.E. ("Davis") in Shreveport, Louisiana for structural analysis.  Davis identified problems with the structural integrity of Allen Galyean's design and re-designs during three rounds of analysis.  After the third round of analyses, Allen Galyean told Thomas and DelaRosa to quit working on any concept of a low profile tank trailer.

15.     Thomas and DelaRosa, believing their original concept was on the path to a working design, started to build their initial design in the Galyean Equipment shop.

16.     When Allen Galyean discovered Thomas and DelaRosa's attempted construction of the design he had rejected, he became furious and forced Thomas and DelaRosa to use a cutting torch to destroy and scrap the partially built low profile tank trailer as it had been conceived and designed by Thomas and DelaRosa.

4

17.     In the third quarter of 2008, Galyean Equipment sales began to rapidly fall due to a decrease in orders consistent with the declining economic climate of the nation at that time.  Between the third quarter of 2008, and the time when Thomas and DelaRosa were terminated from Galyean Equipment, Allen Galyean reduced his workforce from approximately 80 employees to 16 employees, who were on 32-hour workweeks.  During this significant reduction in Galyean Equipment's workforce, Allen Galyean began to routinely threaten to fire both Thomas and DelaRosa.

18.     In the first half of 2009, Thomas and DelaRosa approached Allen Galyean and tried to convince him that their design for a low profile tank trailer would be successful, but, once again, Allen Galyean rejected Thomas and DelaRosa's plan for a low profile tank trailer.  Again, at an oil-field technology conference in Shreveport in 2009, Galyean again rejected the idea of a low profile tank trailer as suggested to him by Thomas and DelaRosa.

19.     In the fourth quarter of 2009, Thomas and DelaRosa began to work after-hours and on weekends to start their own trailer design and manufacturing business.  They planned to continue to innovate and improve their initial concept for a low profile tank trailer, which Allen Galyean had outright rejected and disapproved on multiple occasions.

20.     In November of 2009, Thomas and DelaRosa, along with Merrill Jensen ("Jensen") as a financial backer, located and secured a building to lease that would become the place of operations for GlobalFab, the company to be formed by Thomas, DelaRosa, and Jensen in the coming months.

21.     On or about December 18, 2009, Allen Galyean discovered that Thomas and DelaRosa had planned to resign from Galyean Equipment and form GlobalFab.  At that

time, Allen Galyean confronted Thomas, threatened to sue, and demanded to know what trailers Thomas and DelaRosa had built.  As of that time, Thomas and DelaRosa had not built or started to build any trailer.

22.      On Friday, December 18, 2009, Thomas submitted his resignation to Allen Galyean and left Galyean Equipment's company truck on the premises of Galyean Equipment.

23.      On Monday, December 21, 2009, when Thomas arrived to collect his personal effects from his office, he discovered that Allen Galyean had already terminated DelaRosa.  Allen Galyean told Thomas that the financial books of Galyean Equipment and Galyean L.P. would be audited, and threatened to sue and file criminal charges against Thomas if anything wrong was discovered during the audit.  Thomas at that time informed Allen Galyean that Thomas had never taken any money; that he left all drawings, plans, schematics, and any other property of Galyean Equipment at the office; and that he did not need or want any of Allen Galyean or Galyean Equipment's plans or documents.  Thomas left the premises with only his personal effects and returned his office keys to Allen Galyean.

24.      In January of 2010, Thomas and DelaRosa opened the workshop and office of GlobalFab and began to produce their first prototype low profile tank trailer based on a separate and distinct design over their initial conception while at Galyean.  This new and improved design was created on Thomas and DelaRosa's own time, using materials and labor paid for from the company bank account of GlobalFab.  (See Exhibit A).

25.      Thomas, DelaRosa, and GlobalFab have amassed confidential, proprietary, and trade secret information in areas of trailer fabrication, design, and manufacturing.

Plaintiffs maintain this information in confidence and secrecy.   This confidential, proprietary, and trade secret information gives Plaintiffs a competitive advantage.

26.       Plaintiffs took protective measures to protect the confidential, proprietary, and trade secret information such as (a) limiting the accessibility of its confidential, proprietary and trade secret information to those employees or vendors who have a need to know such information; (b) restricting entrance to shop areas where confidential, proprietary or trade secret information is being developed; (c) limiting access to GlobalFab's computer data base through, among other measures, the use of computer passwords; and (d) maintaining a secured facility.

27.       On March 9, 2010, a search and arrest warrant was signed and sworn to by Officer Craig Sweeney and was based on false information from Allen Galyean, as part of the plan to violate the civil rights of Thomas, DelaRosa, and GlobalFab.  The search and arrest warrant was executed for the purposes of wrongfully seizing property allegedly stolen from Galyean, to misappropriate the Plaintiffs' confidential and proprietary information and trade secrets, and to wrongfully arrest Thomas, DelaRosa, and Jensen for false theft charges.

28.       Officer Sweeney's affidavit in support of the search and arrest warrant alleges that on or about December 30, 2009, "three individuals," namely Thomas, DelaRosa, and Jensen "unlawfully appropriate[d]" property from Galyean Equipment Co., namely, "iron tubing, axles, trailer end caps, trailer jacks, truck tires, wheels, fenders, valves, hose trays, diamond plated tool boxes, etc." as well as "computers including external hard-drives, PCs and lap tops, or any other electronic storage devices." (Exhibit B).  Also, Officer Sweeney relied on Allen Galyean's false statements that Allen Galyean was the inventor

and owner of intellectual property described as "drawings, blue prints, etc. regarding construction of vacuum trailers" and that "Mr. Thomas and Mr. DelaRosa took his drawings, blue prints, etc. and various materials from his business by using an external hard-drive and opened up their own business in competition." (Exhibit B).   Officer Sweeney supported his belief of probable cause for the search and seizure on these items with his concurrent investigation of the other theft charges falsely brought by Galyean as part of the plan to violate the civil rights of Thomas and GlobalFab.  Officer Sweeney did not conduct a thorough or adequate independent investigation of Galyean's claims before signing and swearing to the affidavit in support of the search and arrest warrant.  (See Exhibit B).

29.      On March 10, 2010, at approximately 10:30 a.m. Central Standard Time, Officers Sweeney, Marshall and Dukes, among other officers of the Henderson Police Department, executed a raid of GlobalFab's property.  The officers executed the raid with their weapons drawn, even though there was no indication in the search and arrest warrant that the Defendants were dangerous or possessed weapons of their own.

30.      The raid of GlobalFab occurred during business hours and interrupted Thomas' work on his computer where he had been making additions to a CAD drawing.  Thomas asked one of the officers if he could save the CAD drawing he had been working on for several hours before the officers removed the computers.   The officer belligerently responded that he had "special forensic instructions" for shutting down the computers and for Thomas not to touch it.  The officer then yanked the computer's power cord from the electrical outlet, causing unknown damage to the computer's internal parts and memory.

31.     The actions of the police officers were unprofessional, unnecessary, and clearly calculated to intimidate Thomas and the employees at GlobalFab.  The use of excessive force was epitomized when the officers rounded up all the GlobalFab employees at gunpoint and had them spread their arms and legs against a small trailer. Thomas' father, an elderly gentleman, mentioned to one of the officers that he had a pocketknife in his pocket.  The officer then told all the employees to empty their pockets.  However, another officer who had not heard the instruction panicked when the employees began reaching into their pockets, readied and aimed his weapon at the employees, and shouted at them to freeze.   Only sheer luck prevented the employees from being shot by the police officers.

32.     The officers wrongfully seized 1- HP Pavilion Elite CPU – Model E92204 Mdl MXU19470, 1- 2GB Alltel Micro SD thumb drive, 1-external HD WX50A 99DM7007 by WD blk with cable, hand drawn trailer diagrams, blueprints, notebooks, CDs, and 1- 43001 Apollo 130 vacuum trailer white VIN 1G9ST4326AH43001 5460 gal cap w/diamond tool box and eight (8) Yokohama tires 255/70 R22.5.  (See Exhibit C).  These items and more are detailed in Officer Sweeney's Return and Inventory affidavit executed on March 10, 2010, after the raid.  (See Exhibit C).

33.     During the raid, Thomas informed the police officers that receipts for each of the items being seized by the police officers were in the filing cabinet near the computer.  (See Exhibit A).   One of the police officer's informed Thomas that they "were not interested" in the receipts, even though the receipts would show that Thomas and/or GlobalFab had rightfully purchased each and every item alleged to have been stolen by Allen Galyean and Galyean Equipment.

34.     The City of Henderson Police Department has wrongfully allowed persons to come and inspect, photograph, measure, and examine the seized Apollo 130 trailer.  It is alleged that Allen Galyean, Thomas' former employer and the criminal complainant, has been allowed access by the City of Henderson Police Department to inspect, photograph, measure, and examine the seized GlobalFab trailer, and has unlawfully and improperly misappropriated Thomas and GlobalFab's confidential and proprietary information, intellectual property, and trade secrets, in furtherance of their conspiracy to violate the civil rights of Thomas and GlobalFab.

35.     It is further alleged that Allen Galyean has been granted access or given a copy of the electronic storage devices and the computer that was seized on March 10, 2010, by the City of Henderson and the Henderson Police Department.  The computer and electronic storage devices contain Thomas and GlobalFab's confidential and proprietary information, intellectual property, and trade secrets.  Through this access Allen Galyean has improperly gained access to and taken GlobalFab and Thomas' confidential and proprietary information, intellectual property, and trade secrets, in furtherance of the conspiracy to violate the civil rights of Thomas, DelaRosa, and GlobalFab.

36.     During his employment with Galyean, Thomas invested a portion of his earnings in a 401k plan through Galyean with American Funds, brokered by Edward Jones and administrated by July Business Services.   The value of Thomas' 401k plan is approximately thirty-five thousand dollars ($35,000.000).   Thomas has repeatedly requested that Galyean release his 401k funds to him since his employment termination, but Galyean refuses to sign the paperwork required by July Business Services to release the funds. (See Exhibits D & E).

37.      Thus, Galyean Equipment and Allen Galyean had been offered, and outright rejected, the invention and design by Thomas and DelaRosa at least six times through the following acts:

a. in the spring of 2008, Thomas and DelaRosa presented an initial concept and design to Allen Galyean regarding their ideas for a low profile tank trailer.  Allen Galyean at that time rejected the concept and said "that will never work" and that it was a "poor design."

b. later in the spring of 2008, Thomas and DelaRosa again raised the topic of wanting to pursue their initial concept for a low profile tank trailer with Allen Galyean.  Allen Galyean again refused to allow Thomas and DelaRosa to pursue their concept, and instead had Thomas and DelaRosa draft and pursue Allen Galyean's own design for a tank trailer.

c. in the summer of 2008, after trying Allen Galyean's own design and failing to render a functional tank trailer from that design, Thomas and DelaRosa again proposed their original design and concept again to Allen Galyean.  Allen Galyean again outright rejected their idea and wanted nothing to do with it.

d. shortly after that still in the summer of 2008, Thomas and DelaRosa attempted to fabricate their initial concept and design in the Galyean Equipment shop.  Allen Galyean, upon learning of the fabrication attempt, had the partially built tank trailer dismantled and scrapped and again stated that he did not want anything to do with Thomas and DelaRosa's design for the low profile tank trailer.

e. in or around March of 2009, Thomas approached Allen Galyean in his office about why he and Galyean Equipment were not interested in Thomas and

DelaRosa's trailer design and concept for a low profile tank trailer. Allen Galyean at that time again rejected the idea of Galyean Equipment manufacturing or pursuing Thomas and DelaRosa's low profile tank trailer design and concept.

f.  in or around November of 2009, Thomas, DelaRosa, Allen Galyean and others attended a dinner in Shreveport, Louisiana after a trade show. A conversation took place that night about why Galyean Equipment was not pursuing Thomas and DelaRosa's concept for a low profile tank trailer. Allen Galyean at that time again responded that he was not interested in building Thomas and DelaRosa's concept and that he had other trailers designs he wanted to build and pursue.

38.     Allen Galyean has further asserted that he is the owner of Thomas and DelaRosa's design and concept for the low profile tank trailer. Such assertions and statements are from Allen Galyean's affidavit as filed in a state court civil action (4th District Court of Rusk County, No. 2010-017) on January 21, 2010. (See Exhibit F). The affidavit states as follows:

a.  "[I]t became abundantly clear to Galyean that the member of GlobalFab intended to use Galyean's proprietary and confidential information";

b.  "More specifically, [Allen] Galyean interviewed its employees and learned that members of GlobalFab used design drawings located on Galyean's computer system, which were under Allen Galyean's name, to cut parts needed to create proprietary fit-up rolls designed by Galyean for its specific operation."

c.  "… members of GlobalFab intend to use Galyean's proprietary and confidential information to manufacture the exact same products as Galyean using the exact same process as Galyean."

Through these statements, among others by, Allen Galyean has asserted that he owns Thomas and DelaRosa's design and concept for the low profile tank trailer, because the designs were under his name and located on his computer. (See Exhibit F).

## CAUSES OF ACTION

### Count I
### Civil Rights Violation, 42 U.S.C. § 1983

39.     All preceding paragraphs are included by reference as if fully set forth herein.

40.     Plaintiffs have a right under the Fourth and Fourteenth Amendments to be free from illegal and unreasonable searches and seizures and to not be deprived of property without due process of law.  The search perpetrated by the Henderson Police Department was performed in an unreasonable manner because it was based on the false criminal allegations made by Allen Galyean without proper investigation of the underlying facts. The illegal and unreasonable search and seizure of Plaintiffs' property and the deprivation of Plaintiffs' rights was committed under color of state law.

41.     The search warrant was sworn and issued based on false statements of Allen Galyean to Officer Craig Sweeney; namely, that the items described as stolen from Allen Galyean and Galyean Equipment Co. were actually the personal property of GlobalFab, Thomas, and/or DelaRosa.   Additionally, Allen Galyean knowingly made false statements to Officer Sweeney including the statement that Allen Galyean was the owner of GlobalFab's low profile tank trailer.   Allen Galyean knowingly made these false statements in furtherance of having a search warrant executed to seize and then misappropriate Plaintiffs' proprietary and confidential information and trade secrets.

42.     The search warrant also was executed in an unreasonable manner due to the excessive use of force.  The police executing the search warrant/raid had no reason to

suspect an armed or dangerous resistance from Thomas or any of the GlobalFab employees. The police used excessive and unreasonable force when they broke through the front door of GlobalFab with firearms drawn and ready, body armor, and Gestapo tactics, as if going into a hostage rescue scenario, even though they were executing a simple, albeit improper, search warrant.

43.     The acts of Defendants, under color of state law, and under color of their authority as police officers of the City of Henderson and the Henderson Police Department deprived Plaintiffs of the privileges and immunities guaranteed to Plaintiffs as citizens of the United States, by the Fourth and Fourteenth Amendments of the Constitution of the United States.

### Count II
### Conspiracy to Commit Civil Rights Violations, 42 U.S.C. § 1985(c)

44.     All preceding paragraphs are included by reference as if fully set forth herein.

45.     The Defendants have conspired to deprive Thomas and DelaRosa of their Constitutionally protected right to be free from unreasonable searches and seizures and to deprive Thomas and GlobalFab of their personal property, including Plaintiffs' confidential and proprietary information and trade secrets.

### Count III
### Libel and/or Slander

46.     All preceding paragraphs are included by reference as if fully set forth herein.

47.     Allen Galyean spoke in person and on the telephone with one or more of his business contacts in the trailer industry, and/or published statements of fact by e-mail or letter to same, stating that Thomas, DelaRosa, and GlobalFab had committed theft, misappropriation, and other similar allegations. Additionally, Allen Galyean and/or his

agent or agents made similar defamatory statements to the press, causing a newspaper article to be published describing the above-named false criminal allegations.

48.     These statements were false and defamatory, and were made without privilege.

49.     With regard to the truth of the statement, Allen Galyean was acting with negligence or actual malice.  Allen Galyean's motivation in making these statements to his contacts in the trailer industry was to discourage these contacts from doing business with the newly-formed GlobalFab company headed by Thomas and DelaRosa.

50.     As a result of the above, Thomas, DelaRosa, and GlobalFab have suffered injury to the personal reputation of Thomas, DelaRosa, and GlobalFab and have suffered actual pecuniary injury by the means of lost business.

**Count IV**
**Business Disparagement**

51.     All preceding paragraphs are included by reference as if fully set forth herein.

52.     Allen Galyean published disparaging words about Thomas, DelaRosa, and GlobalFab 's economic interests, attacking Thomas, DelaRosa, and GlobalFab's financial position and the character of its business by alleging that Thomas, DelaRosa, and GlobalFab had stolen Allen Galyean and Galyean Equipment's intellectual property and applied such intellectual property in the construction of GlobalFab's low profile tank trailers.

53.     Allen Galyean published these disparaging words with malice and without privilege.

54.     The publication caused special damages by the loss of suppliers of parts and labor.  GlobalFab must now use many different suppliers for its materials and labor than Galyean, some of whose suppliers will not associate with GlobalFab.

**Count V**
**Misappropriation of Confidential and Proprietary Information and Trade Secrets and**
**Unfair Competition**

55.      All preceding paragraphs are included by reference as if fully set forth herein.

56.      GlobalFab, Thomas, and DelaRosa owned confidential and proprietary information and trade secrets in the area of trailer fabrication, design, and manufacturing.

57.      Allen Galyean used or disclosed the confidential and proprietary information and trade secrets after acquiring such information and trade secrets by improper means. Such improper means includes the filing of false statements of an alleged theft with the Henderson Police Department in furtherance of having a warrant issued for the search and seizure of such alleged property. Once the property had been seized by the Henderson Police Department and stored at the police impound, Allen Galyean has gained access to and reviewed Plaintiff's confidential and proprietary information and trade secrets while such documents and tangible items are in the custody of the Henderson Police Department.

58.      GlobalFab, Thomas and DelaRosa have suffered injury as Allen Galyean and Galyean Equipment have gained an unfair advantage and have improperly gained and used Plaintiffs' confidential and proprietary information and trade secrets. Plaintiffs request a preliminary and permanent injunction enjoining the further use and disclosure of Plaintiff's confidential and proprietary information and trade secrets by Defendants.


**Count VI**
**Abuse of Process**

59.      All preceding paragraphs are included by reference as if fully set forth herein.

60.     Allen Galyean, through Galyean Equipment and Galyean L.P., has filed a civil suit and caused to issue a temporary restraining order, now dissolved, against Mr. Thomas, Mr. DelaRosa, and GlobalFab.  Galyean and Galyean Equipment sought to prevent Thomas and GlobalFab from manufacturing, designing, or selling any of GlobalFab's proprietary trailer designs, to which Allen Galyean claims ownership of the design.

61.     Allen Galyean has filed improper, malicious, and false reports with the Henderson Police Department.  The Henderson Police Department, without investigating or only minimally investigating whether Allen Galyean's claims were true, caused a search and arrest warrant to be issued and executed against GlobalFab, Thomas, and DelaRosa to violate Plaintiffs' rights, harm their business, and ruin their reputations.  Allen Galyean has also willfully caused the Henderson Police Department to open a "criminal investigation" against GlobalFab, Thomas, and DelaRosa for the purposes of destroying Plaintiffs' business and goodwill in the community.

62.     Allen Galyean has and is continuing to use the "criminal investigation" in an illegal, improper, or perverted manner in conjunction with the co-pending civil suit to gain an undue litigation, business and economic advantage over Plaintiffs.

63.     GlobalFab, Thomas, and DelaRosa have and are continuing to suffer injury through Allen Galyean's abuse of process and his filing of criminal complaints against Plaintiffs with the Henderson Police Department causing economic injury, deprivation of Plaintiffs' business, a diminution of Plaintiffs' goodwill in the community.

**Count VII**
**Conversion of 401K Funds – Galyean**

64.     All preceding paragraphs are included by reference as if fully set forth herein.

65.     Thomas owns and has a right to possess the vested proceeds of his 401K plan held by American Funds through Galyean Equipment Co.

66.     The plan had a vested balance of $35,013.06 as of December 31, 2009.  This plan is in Thomas's personal name and the funds are specifically segregated for Thomas.

67.     Allen Galyean, as manager of the 401K plan, has exercised control of the 401K plan and has refused to release the vested funds of Thomas' 401K plan.

68.     Thomas' prior attorney requested that the funds be released to Thomas.  Allen Galyean has refused to release Thomas' funds within the Galyean Equipment 401K.

69.     Thomas has suffered injury by not having possession and use of his vested funds in the Galyean Equipment 401K plan.

## Count VIII
## Conversion – Items Seized in Raid

70.     All preceding paragraphs are included by reference as if fully set forth herein.

71.     Thomas, DelaRosa, and GlobalFab own and have a right to possess all of the items seized during the raid conducted by the Henderson Police Department, including the fabricated trailer, the drawings and blueprints, the computers, and the software, designs, and other trade secrets and business records held thereon.

72.     The Henderson Police Department now exercises control of the items seized in the raid and has refused to return the items at the request of Thomas and GlobalFab's attorney and Mr. DelaRosa's attorney.  The Henderson Police Department has refused to release these items.

73.     Thomas, DelaRosa, and GlobalFab have suffered injury by losing access to their first complete trailer, the prototype of their original design, and by losing access to their

drawings, blueprints, software, trade secrets, and business records seized in paper and electronic form.  Additionally, there is a great likelihood that the computer's memory was damaged, and Thomas and GlobalFab's original work was destroyed, when the Henderson Police officer employed his so-called "special forensic technique" of yanking out the computer's power cord without saving the data on the computer first.

**Count IX**
**Unjust Enrichment**

74.     All preceding paragraphs are included by reference as if fully set forth herein.

75.     Defendants, Allen Galyean, Galyean Equipment, and Galyean L.P, have been unjustly enriched by obtaining and using Plaintiffs' proprietary and confidential information, intellectual property, and trade secrets.

76.     Defendants, Allen Galyean, Galyean Equipment, and Galyean L.P, obtained Plaintiffs' proprietary and confidential information, intellectual property, and trade secrets through fraud, duress, or by taking an undue advantage, namely, by improperly gaining access to Plaintiffs' proprietary and confidential information, intellectual property, and trade secrets through the Henderson Police Department.

**Count X**
**Negligence – Gross Negligence**
***Against Allen Galyean***

77.     All preceding paragraphs are included by reference as if fully set forth herein.

78.     Allen Galyean owed a legal duty of ordinary care to Thomas, DelaRosa, and GlobalFab; that is, he had a duty to act as a person of ordinary prudence would have done under the same or similar circumstances.

79.     Allen Galyean breached the duty of ordinary care when he filed false police reports and/or made a false criminal complaint against GlobalFab, Thomas and

DelaRosa.  Additionally, Allen Galyean breached the duty of ordinary care in airing his private disputes with Thomas, DelaRosa, and GlobalFab by telling his contacts in the oil field industry, by speaking and/or writing, that Thomas, DelaRosa, and/or GlobalFab had allegedly committed theft and other crimes against Galyean Equipment Co. without reasonably investigating the truth of those assertions.

80.      Allen Galyean's breach of the duty of ordinary care proximately caused injury to Thomas, DelaRosa, and GlobalFab by depriving them of business opportunities, of the use of the trailer they had constructed from materials purchased themselves, and of the use of the blueprints, designs, and CAD designing software and the computers on which the software was installed.

81.      Allen Galyean was grossly negligent because his acts and/or omissions, when viewed objectively from Allen Galyean's standpoint, involved an extreme degree of risk; and because Allen Galyean had actual, subjective awareness of the risk of harm to Thomas, DelaRosa, and GlobalFab but proceeded with a conscious indifference to the rights, safety, or welfare of Thomas, DelaRosa, and GlobalFab.

## Count XI
### Negligence – Gross Negligence
*Against Henderson Police Department*

82.      All preceding paragraphs are included by reference as if fully set forth herein.

83.      The Henderson Police Department owed Thomas, DelaRosa, and GlobalFab a professional duty of ordinary care in the investigation of Galyean's criminal complaint and in the execution of the raid conducted pursuant to the search and arrest warrant; that is, the Henderson Police Department should have acted as a professional organization of ordinary prudence in its particular field would have done under the same or similar

circumstances.   Additionally, the Henderson Police Department failed to act in good faith, as a reasonably prudent official under the same or similar circumstances would have believed its action was justified based on the information they possessed when the conduct occurred.

84.      The Henderson Police Department breached its professional duty of ordinary care by failing to adequately investigate the criminal allegations brought by Galyean before acting on the search and arrest warrant.  They executed the raid on GlobalFab's premises with drawn, loaded and ready weapons without reason to believe that they would be met with resistance.  One officer claimed he had a "special forensic technique" for preserving the information on the computer in use by Thomas at the time of the raid, and yanked the computer's power cord out of the wall without saving any data.  When Thomas informed the officers he had receipts for the parts of the allegedly-stolen trailer in a file cabinet on-premises, the officers claimed they "were not interested" in looking at these receipts.  The officers were not clear in their communication to each other and to the GlobalFab employees during the raid, so that GlobalFab employees were nearly shot by one officer when another officer ordered them to empty their pockets.  Lastly, the Henderson Police Department has allowed at least one civilian without identification or permission to inspect the trailer held on the Henderson Police Office's impound lot, and has likely allowed Galyean, now a competitor of GlobalFab, to measure, photograph, and otherwise inspect the trailer while on the police impound lot.  The Henderson Police Department was negligent, grossly negligent, or intentionally tortious in taking these actions.

85.      The Henderson Police Department's breach of the professional duty of ordinary care proximately caused injury to Thomas, DelaRosa, and GlobalFab by depriving them

of business opportunities, of the use of the trailer they had constructed from materials purchased themselves, and of the use of the blueprints, designs, and CAD designing software and the computers on which the software was installed.  Additionally, it is very likely that the data stored on the computer Thomas was working on has been irretrievably lost or damaged by the officer's reckless conduct in yanking out the computer's power cord.  Lastly, it is likely that Galyean has been given the opportunity to inspect and copy the drawings and blueprints seized in the raid; to measure, photograph, and otherwise inspect the prototype trailer in the police impound yard; and to access the information stored on the computers seized in the raid; as a result, Plaintiffs have likely lost control of their trade secrets and confidential information.

86.        The Henderson Police Department was grossly negligent because its acts and/or omissions, when viewed objectively from its standpoint, involved an extreme degree of risk; and because the Henderson Police Department had actual, subjective awareness of the risk of harm to Thomas, DelaRosa, and GlobalFab but proceeded with a conscious indifference to the rights, safety, or welfare of Thomas, DelaRosa, and GlobalFab.

**Count XII**
**Fraud - Galyean**

87.        Allen Galyean made material representations to Thomas and DelaRosa on numerous occasions that he and his companies did not want to build or develop a low profile tank trailer.

88.        This representation was false, as now Allen Galyean claims ownership and inventorship of the low profile tank trailer design; Allen Galyean's representation at the time he made it was either knowingly false or made recklessly as a positive assertion and without knowledge of its truth.

89.     Allen Galyean intended Thomas and GlobalFab to rely on his representation that the Galyean companies would not build low profile tank trailers, as he told them on at least six occasions to cease work on the low profile tank trailer; ordered them to destroy the preliminary low profile tank trailer Thomas and DelaRosa attempted to build; and repeatedly represented that Galyean would not consider further development or production of a low profile tank trailer.

90.     In reliance on Galyean's misrepresentation, Thomas and DelaRosa invested in starting up the GlobalFab business to build low profile tank trailers by securing a premises for GlobalFab; purchasing equipment and supplies for use at GlobalFab; securing materials, labor, and engineering expertise to perfect their design for a low profile tank trailer; and constructing the first GlobalFab prototype low profile tank trailer.

91.     Thomas, DelaRosa, and GlobalFab have suffered injury as a result of their reliance on Allen Galyean's misrepresentation because their prototype trailer has been seized, as well as their computers, blueprints, drawings, and software containing their confidential and proprietary information and trade secrets for the construction of the low profile tank trailer.  Additionally, as a result of their prototype low profile tank trailer being seized, Thomas, DelaRosa, and GlobalFab have been deprived of the use of the trailer they built as a floor model for potential customers to examine for potential purchase.  Lastly, Thomas, DelaRosa, and GlobalFab have suffered injury by investing their time, energy, and resources in the development of a concept over which Galyean now claims inventorship and ownership by their sufferance of the civil temporary injunction sought by Allen Galyean which prevented them from building low profile tank

trailers, and the police raid instigated by Allen Galyean which deprived them of possession of their rightful personal property, including their intellectual property.

## JURY DEMAND

92.      Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury of any and all issues so triable.

## PRAYER

GlobalFab, L.L.C. and Timothy Scott Thomas, respectfully pray as follows:

a.      A preliminary injunction, until trial on the merits is had, preliminary enjoining the Defendants from

b.      A permanent injunction, upon a trial on the merits, permanently enjoining the Defendants, Allen Galyean, Galyean Equipment Co. and Galyean L.P. from misappropriating, disclosing or using GlobalFab and/or Thomas' confidential, proprietary, and trade secret information and from being unjustly enriched at Plaintiffs' expense.

c.      Awarding actual damages and future damages adequate to compensate Plaintiffs for its loss and diminution of value against Defendants because of unjust enrichment, breach of trust and confidential relationship, misappropriation of Plaintiffs' confidential, proprietary and trade secret information;

d.      Awarding actual damages adequate to compensate Plaintiffs for violations of their civil rights;

e.      An award of nominal damages, as an alternative to actual damages, in the event actual damages are not awarded for violations of Plaintiffs' civil rights;

f.      An award of punitive damages against the Defendants responsible for committing violations of Plaintiffs' civil rights.

g.      An award of exemplary damages;

h.      An order requiring the turnover of Thomas' separate, vested funds from the Galyean Equipment 401K fund;

i.      Plaintiffs' reasonable attorneys' fees;

j.      An award of prejudgment interest; and

k.      Awarding Plaintiffs all such other and further relief as is available, at law or in equity that this Court deems just, equitable, and proper under the circumstances to which Plaintiffs may be entitled.

Dated:  April 29, 2010                    Respectfully submitted,


                                          */s Matthew C. Juren s/*
                                          Guy E. Matthews (attorney-in-charge)
                                          State Bar No. 13207000
                                          Terry B. Joseph
                                          Texas Bar No. 11029500
                                          Matthew C. Juren
                                          Texas Bar No. 24065530
                                          Matthews, Lawson, Johnson & Payne, PLLC
                                          2000 Bering Drive, Suite 700
                                          Houston, Texas 77057
                                          (713) 355-4200 (Telephone)
                                          (713) 355-9689 (Facsimile)
                                          Email: gmatthews@matthewsfirm.com
                                                 tjoseph@matthewsfirm.com
                                                 mjuren@matthewsfirm.com


                                          **ATTORNEYS FOR PLAINTIFFS**
                                          **GLOBAL FAB, LLC and**
                                          **TIMOTHY SCOTT THOMAS**